OPINION
{¶ 1} Defendant-appellant Leon Kisseberth appeals from his conviction and sentence for sexual battery and unlawful sexual conduct with a minor. On March 24, 2004, Kisseberth was indicted for one count of sexual battery for engaging in sexual conduct with a mentally retarded, twenty-year old man. The sexual battery charge included a sexually violent predator specification. Kisseberth was also indicted for two counts of unlawful sexual conduct with a minor for engaging in sexual conduct with a fifteen-year old male. Because Kisseberth had previously been convicted of rape in 1977 in Cuyahoga County, the two counts of unlawful sexual conduct with a minor were elevated to felonies of the second degree.
 {¶ 2} Following a jury trial that lasted from March 29, 2004 through April 2, 2004, the jury returned a guilty verdict as to all counts in the indictment. On April 16, 2004, the trial court sentenced Kisseberth to an aggregate prison term of twenty-one (21) years to life in prison, and as a result of the conviction, he was labeled both a sexual predator and a habitual sex offender.
 {¶ 3} In the instant appeal, Kisseberth submits four assignments of error for review by this Court. In his first assignment, Kisseberth contends the trial court erred by overruling his supplemental motion in limine in which he requested the court to permit him to stipulate to a prior rape conviction rather than allowing the State to prove the prior conviction to the jury.
 {¶ 4} In his second assignment, Kisseberth asserts that he received ineffective assistance of counsel at the trial level. In support of this contention, Kisseberth argues that his trial counsel's performance was deficient for the following reasons: 1) failure to object to the State's introduction of testimony concerning allegedly pornographic books found in Kisseberth's apartment at the time of his arrest; 2) failure to object to testimony of a witness that was used to allegedly bolster the credibility of one of the complaining witnesses; 3) failure to effectively introduce contradictory testimony of one of the complaining witnesses with respect to that witness' allegations of rape made against individuals other than Kisseberth; 4) failure to request separate trials; 5) failure to file a bill of particulars concerning that nature of the "sexual conduct" alleged in count one of the indictment; and 6) failure to object to the introduction of evidence of Kisseberth's prior conviction so as to preserve the issue on appeal.
 {¶ 5} In his third assignment, Kisseberth contends that he was denied a fair trial and deprived of due process of law by the cumulative errors made during the trial. Lastly, Kisseberth asserts in his fourth and final assignment of error that his conviction was against the manifest weight of the evidence.
 {¶ 6} After a thorough review of the record, we find that Kisseberth's assignments of error are without merit and are, thus, overruled.
 {¶ 7} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 8} In 1977, Kisseberth plead guilty to rape and was sentenced to seven to twenty-five years in prison. After serving approximately twenty years of his sentence, Kisseberth was released in 2002. He relocated to Dayton, Ohio, as his brother lived in Xenia and could offer him some assistance.
 {¶ 9} After arriving in Dayton, Kisseberth was homeless for a short time. During this period, he was able to obtain food and lodging at The Other Place and St. Vincent Hotel, homeless shelters located in downtown Dayton. Eventually, however, Kisseberth was able to acquire an apartment at Wilkinson Plaza, a housing community for senior citizens.
 {¶ 10} While Kisseberth was still homeless in the summer of 2002, he became acquainted with J.F., a mentally retarded twenty-year old who had recently run away from the home of his adopted parents and was also frequenting the homeless shelters in Dayton. Kisseberth and J.F. had limited contact while both were homeless, but after Kisseberth obtained the apartment at Wilkinson Plaza, he gave J.F. food and allowed him to stay overnight on numerous occasions. At trial, J.F. testified that it was on these occasions that Kisseberth began making sexual advances towards him. These advances allegedly culminated in J.F. and Kisseberth engaging in both oral and anal sex at the Wilkinson Plaza address. J.F. further testified that while he was staying at Kisseberth's apartment, Kisseberth walked around in the nude and urged J.F. to do the same. Kisseberth also allegedly shaved J.F.'s pubic area and showed him books depicting nude people.
 {¶ 11} J.F. eventually took up residence in a group home called Marty's Natural Care also located in Dayton. Testimony was adduced at trial that Kisseberth traveled to the group home where J.F. was living and engaged in oral sex with him there. In October of 2002, Jennifer and Lindbergh Bingham took J.F. into their home. From that point on, Kisseberth was not allowed contact with J.F. The Binghams have since been named J.F.'s foster parents. The sex acts Kisseberth performed with J.F. form the basis of count one of the indictment for which Kisseberth was ultimately convicted.
 {¶ 12} Counts two and three of the indictment pertain to accusations made by a second complainant, P.H. At the time said offenses allegedly occurred, P.H. was a fifteen-year old runaway living in the downtown Dayton area. Kisseberth and P.H. were introduced by a mutual acquaintance, and P.H. began staying at Kisseberth's Wilkinson Plaza apartment in December of 2002. While he was living in Kisseberth's apartment, P.H. testified that Kisseberth attempted to perform oral sex on him on numerous occasions, but P.H. refused his advances. P.H. testified that he only stayed at the apartment because he had nowhere else to go.
 {¶ 13} P.H. further testified that shortly after December 25, 2002, and on January 1, 2003, he allowed Kisseberth to perform oral sex on him. Moreover, P.H. stated that, they walked around the apartment in the nude at Kisseberth's urging. P.H., however, stated that he did not allow Kisseberth to shave his pubic area. On January 9, 2003, the Dayton police located P.H. and took him back to his parents.
 {¶ 14} Kisseberth testified that he never attempted to nor did he engage in sexual conduct with either J.F. or P.H. Although he acknowledged that he did walk around his apartment in the nude, he testified that he never did so when company was present. Kisseberth testified that he was only attempting to help the complainants.
 {¶ 15} From his conviction and sentence, Kisseberth appeals.
 II {¶ 16} Kisseberth's first assignment is as follows:
 {¶ 17} "The trial court erred in overruling appellant's supplemental motion in limine, refusing to permit a stipulation to appellant's prior rape conviction and requiring the state to prove the prior conviction to the jury."
 {¶ 18} In his first assignment of error, Kisseberth contends that the trial court erred when it overruled his motion in limine thereby refusing to allow Kisseberth to stipulate to his prior conviction for rape. As a result, the State was required to submit evidence of the prior conviction to the jury. Kisseberth asserts that this was unfairly prejudicial, and thus, deprived him of a fair trial.
 {¶ 19} Kisseberth argues that the trial court erred in overruling his motion in limine, but he has failed to preserve for appellate review his objection to the trial court's liminal ruling.
 {¶ 20} A ruling on a motion in limine is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of an evidentiary issue. State v. Grubb (1986),28 Ohio St.3d 199, 201-202, 503 N.E.2d 142. Finality does not attach to the court's liminal ruling, but rather attaches after the issue becomes ripe for determination during the trial, and the trial court makes its final determination as to the admissibility of the evidence. Id.
 {¶ 21} A ruling on a motion in limine does not preserve the record for appeal. Dixon v. Gregg (April 25, 2003), Montgomery App. No. 19337, 2003-Ohio-2077. An appellate court need not review the propriety of such an order unless the claimed error is preserved by objection, proffer, or ruling on the record when the issue is actually reached during trial.Grubb, supra; State v. White (1982), 6 Ohio App.3d 1, 451 N.E.2d 533, Evid. R. 103.
 {¶ 22} After his motion in limine was denied by the trial court, it was incumbent upon Kisseberth to object during the trial to Detective Debra Ritchie's testimony regarding Kisseberth's prior rape conviction. It is clear from the record that defense counsel did not object to the detective's testimony concerning the prior rape conviction. Defense counsel merely objected to the inclusion of the charges other than rape which were included on the certified termination entry which disclosed the earlier rape conviction. The trial court, as well as the State, agreed with defense counsel that when the termination entry was entered into evidence, the counts other than the rape conviction would be redacted. Having failed to object to the evidence of the prior rape conviction at trial, Kisseberth waived any error in its admission, despite the disposition made by the trial court on the motion in limine.Grubb, supra; White, supra; State v. Wilson (1982), 8 Ohio App.3d 216,456 N.E.2d 1287.
 {¶ 23} Since no formal objection was made by defense counsel to the admittance of evidence of Kisseberth's prior conviction, the error alleged by appellant must be reviewed under the plain error standard set forth in Crim. R. 52(B).
 {¶ 24} Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph 2 of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id., paragraph 3 of syllabus.
 {¶ 25} As we noted in State v. Lenoir (Sept. 12, 1997), Montgomery App. No. 15469, the admission of evidence of a prior conviction may constitute plain error. Long, supra. However, as stated above, the prejudice standard is high. Lenoir, supra. After deciding to admit the evidence of Kisseberth's prior conviction, the trial court provided the jury with a limiting instruction as follows:
 {¶ 26} "this evidence that Leon Kisseberth allegedly was convicted of rape is received because a prior conviction is an element of the offense of unlawful sexual conduct with a minor. It is not received and you maynot consider it to prove the character of Leon Kisseberth in order toshow that he acted in conformity with that character."
 {¶ 27} In support of his contention that the trial court erred by overruling his motion in limine, Kisseberth cites to Old Chief v. UnitedStates (1997), 519 U.S. 172, 117 S.Ct. 644, for the proposition that "a court abuses its discretion under Rule 403 if it spurns a defendant's offer to concede a prior judgment and admits the full judgment record over the defendant's objection, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." Kisseberth asserts that allowing his prior rape conviction to go before the jury, despite the limiting instruction, was unfairly prejudicial, and it was an abuse of discretion for the trial court to refuse to accept the stipulation. We disagree.
 {¶ 28} We would be denying the obvious if we were to say that admitting evidence of Kisseberth's prior rape conviction when he is presently being tried for sexually related offenses could not possibly prejudice the jury. In this instance, however, the State was allowed to introduce only minimal evidence to establish an essential element of the substantive offense. Lenoir, supra at 2. It is well settled law that where a prior conviction elevates the degree of the subsequent offense, as opposed to operating solely as a sentencing enhancement, the defendant has no right to have it bifurcated from the other elements of the subsequent offense. Lenoir, supra, citing State v. Allen (1987),29 Ohio St.3d 53, 54, 506 N.E.2d 199, 201. It is within a court's discretion to allow or disallow a defendant to establish an element of an offense by stipulating to a prior offense. State v. Feltner (Aug. 16, 1989), Miami App. No. 88-CA-34.
 {¶ 29} As already noted, after ruling that the evidence of Kisseberth's prior conviction was admissible, the trial court immediately gave the jury a limiting instruction with respect to how that evidence was to be used. In Lenoir, supra, we stated that a limiting instruction plays an important role in counteracting the inevitable prejudice arising from the admission of evidence of a prior conviction. Here, we find that the limiting instruction offered by the trial court did just that. After a thorough review of the testimony adduced at trial, the jury had before it both competent and credible evidence of Kisseberth's guilt, notwithstanding inclusion of the prior conviction into evidence. Because we find that the witness' testimony was credible and convincing and the court provided the jury with a limiting instruction so that the evidence of the prior conviction would not be exploited, we cannot say that Kisseberth has demonstrated that the outcome of his trial would have been different had the trial court granted his motion in limine.
 {¶ 30} Kisseberth's first assignment of error is overruled.
 III {¶ 31} Kisseberth's second assignment is as follows:
 {¶ 32} "Appellant was denied the effective assistance of counsel."
 {¶ 33} In his second assignment of error, Kisseberth contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Kisseberth cites the following arguments: 1) failure to object to the State's introduction of testimony concerning allegedly pornographic books found in Kisseberth's apartment at the time of his arrest; 2) failure to object to testimony of a witness that was used to allegedly bolster the credibility of one of the complaining witnesses; 3) failure to effectively introduce contradictory testimony of one of the complaining witnesses with respect to that witness' allegations of rape made against individuals other than Kisseberth; 4) failure to request separate trials; 5) failure to file a bill of particulars concerning that nature of the "sexual conduct" alleged in count one of the indictment; and 6) failure to object to the introduction of evidence of Kisseberth's prior conviction so as to preserve the issue on appeal.
 {¶ 34} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing State v.Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 35} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 36} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 37} The arguments Kisseberth submitted with respect to his claim for ineffective assistance of counsel will be discussed in the sequence presented in his brief.
a. Failure to Object to Introduction of Pornographic Materials
 {¶ 38} Initially, Kisseberth argues that his defense counsel provided ineffective assistance of counsel for failing to object to the State's introduction of testimony concerning books with sex-related topics that were found in Kisseberth's apartment. Kisseberth contends that the books were not relevant to the charges against him as the presence of the books did not make it more or less probable that he committed the offenses. In the alternative, Kisseberth argues that if evidence concerning the books is relevant, its relevance is substantially outweighed by the danger of unfair prejudice. Both of Kisseberth's arguments are without merit.
 {¶ 39} In State v. Daniel (1994), 97 Ohio App.3d 548, 567,647 N.E.2d 174, the Tenth District held that in a prosecution arising from the alleged sexual abuse of teenage boys, a pornographic video and sexually explicit magazines found in the defendant's home were relevant insofar as they substantiated the victims' testimony that defendant had showed them such videos. Moreover, the court held that the probative value of the videotape and magazines was not substantially outweighed by danger of unfair prejudice or misleading the jury. In that case, the court noted that the defendant was given the opportunity to explain the presence of those items in his residence. In light of the similar factual scenario in the case before us, we find the reasoning in Daniel, supra, to be persuasive.
 {¶ 40} Introduction of evidence concerning the books found in Kisseberth's apartment was relevant because it substantiated J.F.'s testimony in which he stated that Kisseberth had shown him materials containing sexually explicit pictures. The evidence of the books was further made relevant insofar as it substantiated P.H.'s testimony that he observed the books in a box in Kisseberth's bedroom. Moreover, any danger that the jury would be misled or unfairly prejudiced by admission of the books into evidence was avoided when Kisseberth testified at trial that he used the books for his own educational benefit and not for any deviant purpose. Thus, defense counsel's failure to object to the admission of the books into evidence cannot be considered ineffective assistance of counsel. In light of the foregoing as well as the strong presumption that counsel's performance constituted reasonable assistance, Kisseberth's counsel was not required to perform a futile act. Moreover, Kisseberth has failed to demonstrate that there is a reasonable probability that but for his counsel's failure to object, the result of the case would have been different.
 {¶ 41} B. Failure to object to Jennifer Bingham's testimony
 {¶ 42} Kisseberth next argues that he was provided ineffective assistance in light of his counsel's failure to object to Jennifer Bingham's testimony with respect to a false police report filed by J.F. accusing Kisseberth of threatening to kill him. In particular, Kisseberth contends that Bingham's statement "if you press him [J.F.] hard enough, he'll come out with the truth" was used by the State to improperly bolster J.F.'s credibility with the jury. Kisseberth asserts that Bingham was attempting to vouch for J.F. with respect to the accusations of sexual battery he made against Kisseberth. We disagree.
 {¶ 43} An expert witness may not testify as to the expert's opinion of the veracity of the statements of a child declarant who claims she has been raped. State v. Boston (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. In Boston, the court held that the trial court committed prejudicial error in allowing a physician to express her opinion that the child had not fantasized her abuse and had not been programmed to make accusations against her father. "In our system of justice, it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." Boston, supra at 128-129. InState v. Miller (Jan. 26, 2002), Montgomery App. No. 18102, this Court interpreted Boston's holding with respect to expert testimony to also apply to that of lay witnesses. Thus, it is improper for a witness of any designation to testify that another witness is telling the truth. Statev. Kovac (2002), 150 Ohio App.3d 676, 782 N.E.2d 1185.
 {¶ 44} With respect to the testimony offered by Bingham concerning J.F., a review of the trial transcript reveals that she was not remarking as to whether J.F. was telling the truth about the sexual battery allegedly perpetrated by Kisseberth. Rather, Bingham was testifying about J.F.'s failure to truthfully answer her and her husband concerning the false police report against Kisseberth. This was not an attempt, conscious or otherwise, on Bingham's part to improperly bolster J.F.'s credibility with the jury. In fact, the statement by Bingham could be interpreted as attacking J.F.'s overall credibility and capacity for telling the truth.
 {¶ 45} Thus, defense counsel's failure to object to this statement cannot be considered ineffective assistance of counsel. In any event, Kisseberth has failed to demonstrate that there is a reasonable probability that but for defense counsel's actions, the result of the trial would have been any different.
 {¶ 46} C. Prior Inconsistent Statements
 {¶ 47} In this section, Kisseberth contends that defense counsel's performance was rendered deficient by his failure to subpoena the police officers who interviewed J.F. in June and July of 2002 regarding statements he made to them about an alleged sexual assault committed by unknown perpetrators. Kisseberth argues that because J.F. named someone other than the appellant as the perpetrator during the interview, it was critical that the police officers be required to testify as to J.F.'s statements. Since the abuse he allegedly suffered at Kisseberth's hands occurred during the same period of time he reported the sexual assault by someone other than the appellant, Kisseberth argues that defense counsel's failure to subpoena the police officers in order to highlight J.F.'s prior inconsistent statements is prima facie evidence of ineffective assistance. We disagree.
 {¶ 48} During his cross-examination at trial, defense counsel elicited testimony from J.F. in which he implicated someone other than Kisseberth as having sexually assaulted him during the same time period. The exchange proceeded as follows:
 {¶ 49} "Q: Did you ever have an opportunity to talk to any police officers in July of 2002.
 {¶ 50} "A: I can't remember.
 {¶ 51} "Q: Okay. During the period of time between June 2002 and October 31, 2002, did you ever tell any police officer that somebody had done something to you sexually other than Leon Kisseberth?
 {¶ 52} "A: Yes, I did."
 {¶ 53} Ohio Rule of Evidence 613(B) controls the offering of extrinsic evidence of a prior inconsistent statement. Before such evidence is offered, a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement. State v. Theuring
(1988), 46 Ohio App.3d 152, 546 N.E.2d 436. If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. State v. Harris (Dec. 21, 1994), Montgomery App. Nos. 14343, 92-CR-907. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the "evidence does not relate to a collateral matter[.] * * *" State v. Riggins (1986),35 Ohio App.3d 1, 3. However, if the witness says he cannot remember the prior statement, "a lack of recollection is treated as a denial, and use of extrinsic impeachment evidence is then permitted." State v. Hall
(July 27, 1994), Montgomery App. No. 13805.
 {¶ 54} We find that in light of the admission elicited from J.F. in which he acknowledges and admits making prior inconsistent statements, it was unnecessary for defense counsel to subpoena the police officers to testify to essentially the same evidence offered therein. Defense counsel conducted himself in reasonable manner. Thus, there was no ineffective assistance.
 {¶ 55} D. Failure to Request Separate Trials
 {¶ 56} Kisseberth's next argument with respect to his assignment of ineffective assistance of counsel is that defense counsel failed to move to sever count one involving the sexual battery of J.F. from counts two and three involving unlawful sexual conduct with P.H.
 {¶ 57} Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." However, Crim.R. 14 provides a defendant relief from prejudicial joinder and provides:
 {¶ 58} "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations, or complaints, the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires."
 {¶ 59} It is a general rule that "joinder of offenses is favored to successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to witnesses." State v. Powell
(Dec. 15, 2000), Montgomery App. Nos. 18095, 99-CR-631, citing State v.Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. The Supreme Court has further indicated that that joinder is to be "liberally permitted."State v. Schaim (1992), 65 Ohio St.3d 51, 58, 600 N.E.2d 661.
 {¶ 60} To effectively claim error in the joinder of multiple counts in a single trial, appellant must make an affirmative showing that his rights were prejudiced. See Powell, supra. The state can rebut a defendant's claim of prejudice in two different ways. Under the first method, appropriately referred to as the "other acts" test, the state must exhibit that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the "other acts" portion of Evid.R. 404(B). State v.Schiebel (1990), 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54. Alternatively, under the second method, referred to as the "joinder test," the state "is merely required to show that evidence of each crime joined at trial is simple and direct." State v. Lott (1990), 51 Ohio St.3d 160, 163,555 N.E.2d 293. The purpose of the "joinder test" is to ensure that the jury does not confuse the offenses or improperly cumulate the evidence of the various crimes. Id. at 163-164. Instead, this test "focuses on whether the trier of fact is likely to consider `evidence of one [offense] as corroborative of the other.'" State v. Wiles (1991),59 Ohio St.3d 71, 77, 571 N.E.2d 97.
 {¶ 61} The dates involved in count one of the indictment were June 1, 2002, to October 31, 2002. The underlying offenses in counts two and three were alleged to have occurred between December 18, 2002, and January 12, 2003. Kisseberth contends that simultaneously trying all the counts from separate periods improperly and prejudicially provided additional credibility to the allegations from each separate time period. Kisseberth's argument is without merit.
 {¶ 62} The underlying offense in count one of the indictment is separate and distinct from those in counts two and three. The time frame for count one was distinct from that of the latter two counts. The evidence demonstrates that the two complaining witnesses were unknown to each to each other in 2002 and the beginning of 2003 when the alleged abuse occurred. Each complaining witness testified only to their own experiences with Kisseberth. Essentially, simple and direct evidence was adduced at trial that separately identifies each count and its relation to the individual complaining witness. As stated earlier, Kisseberth's counsel was not required to perform a futile act, and we see little likelihood that, even if defense counsel had requested separate trials, the trial court would have acquiesced to such a motion. Thus, counsel's omission does not rise to the level of ineffective assistance.
 {¶ 63} E. Failure to file a motion for a bill of particulars
 {¶ 64} Kisseberth further contends defense counsel was ineffective when he failed to file a bill of particulars with respect to the nature and location of the "sexual conduct" alleged in count one. Additionally, he argues that his counsel's performance was deficient for failing to object to testimony alleging three separate acts of sexual conduct where Kisseberth was only indicted for one such act.
 {¶ 65} As the State correctly notes, Kisseberth's defense at trial consisted of a complete denial of wrongdoing. He testified that he never engaged in any type of sexual conduct with J.F. or P.H. Thus, defense counsel lacked compelling reasons to file a motion for a bill of particulars, and had he done so, it would have no discernible effect on the outcome of the trial.
 {¶ 66} Other than his bare assertion, Kisseberth provides us with no basis upon which to find that defense counsel's performance was deficient with respect to his failure to object to the admission of "other acts" evidence under Evid.R. 404(B). Without more, Kisseberth is unable to overcome the "strong presumption" that defense counsel's performance constituted reasonable assistance.
 {¶ 67} F. FAILURE TO OBJECT TO PRIOR CONVICTION EVIDENCE
 {¶ 68} Lastly, Kisseberth contends that defense counsel was ineffective for failing to object during trial to admission of evidence regarding his prior conviction for rape. In Kisseberth's first assignment of error, we found that the trial court did not err when it denied appellant's motion in limine. Thus, defense counsel's performance cannot be considered deficient for failing to preserve his objection to the court's ruling. Moreover, Kisseberth provides us with no evidence to support a finding that had defense counsel objected to inclusion of his prior rape conviction, the outcome of the trial would have been any different.
 {¶ 69} Kisseberth's second assignment is overruled.
 IV {¶ 70} Kisseberth's third assignment is as follows:
 {¶ 71} "Appellant was denied a fair trial and deprived of due process of law by the cumulative evidence."
 {¶ 72} In his third assignment of error, Kisseberth contends that the errors set forth in the previous assignments, when viewed cumulatively, denied him a fair trial and deprived him of due process. We have held that appellant's propositions fail to establish errors. State v.Moreland (1990), 50 Ohio St.3d 58, 69, 552 N.E.2d 894, 905. Thus, we fail to see how the absence of error can constitute cumulative error. Id.
 {¶ 73} Kisseberth's third assignment of error is overruled.
 V {¶ 74} Kisseberth's fourth and final assignment is as follows:
 {¶ 75} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 76} In his final assignment of error, Kisseberth contends that the verdict rendered by the jury was against the manifest weight of the evidence. We disagree.
 {¶ 77} When considering a claim that a conviction is against the manifest weight of the evidence, the reviewing court must dutifully examine the entire record, weigh the evidence and consider the credibility of the witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas
(1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356, 1357. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Once a reviewing court has finished its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547. If the state presented substantial evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978),58 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 78} In support of his final assignment, Kisseberth points out that there were no corroborating witnesses to the alleged crimes nor was there any admission of wrongdoing from Kisseberth himself. Appellant also points to the lack of physical evidence to corroborate the charges.
 {¶ 79} After our review of the case at bar, we find substantial, competent, credible evidence upon which the trier of fact could reasonably conclude that the State established beyond a reasonable doubt, the essential elements of the offenses of sexual battery in count one, and unlawful sexual conduct with a minor in counts two and three. The jury had the opportunity during trial to listen to and observe J.F., P.H., and Kisseberth. Obviously, the jury was made aware of the complaining witness' troubled lives. The jury observed that J.F. was essentially mentally retarded and had, in the past, lied to the authorities in an attempt to have Kisseberth incarcerated. However, similar allegations made by P.H. provide strength to J.F.'s allegations. On the other hand, the jury heard the testimony of Kisseberth, who stated that he never engaged in any sexual conduct with either complaining witness and that he just desired to help them. Issues relating to the credibility of witnesses and the weight to be given are primarily for the trier of fact. DeHass, supra. The trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it.State v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277.
 {¶ 80} Clearly, the jury in the case before us opted to believe the State's version of the facts. We cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.
 {¶ 81} Kisseberth's final assignment of error is overruled.
 VI {¶ 82} All of Kisseberth's assignments having been overruled, the judgment of the trial court is affirmed.
Brogan, P.J. and Young, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).